**Earl O. Johnson et al**
**vs.** }No.55887
**Kile & Morgan Co.**
July 17, 1926
RESCRIPT

CAPOTOSTO, J. In an action for breach of contract the jury returned a verdict for the defendant.

At the time of the transaction the plaintiff copartnership was engaged in the wholesale manufacture of lumber under the name of Johnson Brothers' Hardwood Company in Memphis, Tennessee. The defendant corporation was a wholesale lumber dealer in manufactured lumber in the city of Providence in this state and sold its product in car load lots usually by direct shipment from the manufacturer to piano factories and the like in this part of the country. Knowledge of the lumber region from which the wood came and the known reliability of the manufacturer of that lumber are claimed by the defendant to be of vital importance in entering upon any contract for the manufacture of lumber in its behalf.

The dispute between the parties is based upon a claim for damages for the unaccepted balance of three car loads of manufactured lumber. The plaintiffs maintain that they were at liberty to deliver to the defendant or its customers merchantable lumber of the kind and description ordered without any reference to the place from which the lumber came, and especially without any restriction as to who actually manufactured the lumber.

The defendant, on the other hand, claims that it was entitled not only to receive lumber as ordered but that the lumber should come from a certain section and more especially that it was to be manufactured by a designated mill in whose product defendant had confidence.

The question, therefore, is what was the contract between the parties if, in fact, there was any contract at all.

The plaintiffs at the trial, and again in arguing the motion for a new trial, insisted that the rights of the parties are to be determined exclusively from the construction of the defendant's order (Plaintiffs' Exhibit 1 and 2) and from no other source.

This court believes that this contention is unsound. It is of the opinion that the contract, if any, must be determined not only from the order itself but from all the facts and circumstances, especially the communications passing between the parties, existing at the time that the agreement was made or attempted to be made. In a letter of March 23, 1920, before the order in question was given, the plaintiffs, through J. Clayton Johnson, one of the partners, solicited the defendant's business and said: "We wired you today as per enclosed confirmation and wish to advise you that Thane Lumber Company have closed up their office in Memphis; the writer, who was formerly their sales manager is now in business for himself as you will note from the above letterhead and is also selling the output of the Arko Co. who operate a double band mill at Arkansas City, Arkansas."

The plaintiff's letterhead referred to in this letter has in its upper left corner the following printed matter:

"Sales Agents — Arko Lumber Co. —Arkansas City, Ark." and the following statement in its right corner:

"Double band mill—capacity 100,000 feet." (Defendant's Exhibit C.)

The order in controversy, accompanied by a letter of even date, was sent by the defendant on April 12, 1920, and calls for three car loads of certain lumber, "f. o. b. car Memphis, Tenn." (Plaintiffs' Exhibit 1.) The letter which accompanied the order contained, among other things, the following statement:

"We understand that this stock is to come from the Arko Lumber Co. band mill at Arkansas City, * * * ." (Defendant Exhibit C.)

The plaintiffs on April 19, 1920, sent to the defendant an acknowledgment of the order with a letter reading in part as follows:

"We enclose herewith acknowledgment of your order No. 6068. The only change that we have made in this is the f. o. b. price. This stock was quoted to your Mr. Boston f. o. b. our mill and not f. o. b. Memphis." (Plaintiffs' Exhibits 2 and 3.)

Under date of April 22, 1920, the defendant replied in these terms:

"We have your letter of April 19, with acknowledgment of our order No. 6068, you making the price f. o. b. the mill, and with the understanding that the mill is at Arkansas City, we will waive this point and concede to your understanding." (Plaintiffs' Exhibit 4.)

Then followed a series of letters between the parties regarding shipping instructions, insistence on delivery and excuses for delay.

The manner in which the plaintiffs in their letters to the defendant refer to the place where the lumber was being manufactured is of importance.

Under date of July 20, 1920, they say:

"We * * * beg to advise that our mill began cutting on this stock on April 19 * * * ." (Plaintiffs' Exhibit 7.) On July 28, 1920, they write:

"Our order to our mill connection for the stock in question reads * * * " (Plaintiffs' Exhibit 9.)

On August 16, 1920, referring to letter of July 28, 1920, they use the following language:

" * * * as advised you in that letter we placed this business with a responsible band mill * * *. We do not feel that we can honorably or legally go back on the contract which we have with our mill on this stock — — —." (Plaintiffs' Exhibit 10).

And on October 28, 1920, they express themselves as follows:

"Please also let us have shipping instructions on the balance of the stock as our mill is pushing us for shipping instructions." (Plaintiffs' Exhibit 25.)

While these and other letters were passing between the parties the defendant, under date of September 7, 1920, instructed the plaintiffs to forward one car load of lumber. The plaintiffs forwarded one care containing 22,189 feet of lumber, which was approximately a 10,000 feet overload. The defendant at first remonstrated at taking this consignment but finally yielded to the palintiffs' request that it accept the same and in due time paid in full for the lumber which it had received. (Plaintiffs' Exhibits 16 to 25, inclusive.) Up to the early part of November, 1920, the plaintiffs had always referred to "our mill" or "the mill" or "our shipper" in their communications to the defendant. On November 10, 1920, in a letter insisting on further shipping instructions, the plaintiffs for the first time made known to the defendant, who, in fact, was manufacturing the lumber in question in the following terms:

"The Brown & Hackney Co., with whom we have placed this business are continually after us for shipping instruction * * *. We would, therefore, ask that you send us check * * * which will take care of the balance of this stock which Brown & Hackney have cut on this order. * *.* * " (Plaintiffs' Exhibit 26.)

The Brown & Hackney Company, with whom the plaintiffs had placed the defendant's order on April 19, 1920 (Defendant's Exhibit A), was a firm that had been previously unsuccessful in securing business from the defendant. The defendant, therefore, immediately, under date of November 17, 1920, replied:

"Inasmuch as you have abrogated our order, thereby breaking the conditions of the same, which in effect is cancellation, the order is therefore cancelled and records closed." (Plaintiffs' Exhibit 27).

The parties ended their business relations by an interchange of communications which contained a claim for damages, threats of suit and ironical good wishes.

Taking the evidence as a whole this court is of the opinion that the written testimony clearly proves that the defendant in giving this order to the plaintiffs not only intended to purchase lumber manufactured by the Arko Mill, of Arkansas City, Arkansas, but directly and clearly brought this fact to the plaintiffs' attention when it definitely placed this order. The original order and the letter accompanying it (Plaintiffs' Exhibit 1. and Defendant's Exhibit C) must be read together. Again, the modification of the original order as changed by the plaintiffs and the letter in which such modified order was accepted by the defendant can not be construed independently of each other. In the first instance, the defendant, who had been previously apprised by the plaintiffs themselves that they were sales agents for the Arko Lumber

Mills of Arkansas City, Arkansas, says in substance that it will take three car loads of lumber which it understands "is to come from the Arko Lumber Co. band mill at Arkansas City, Arkansas." In the second instance, it accepts the plaintiffs' change of freight charges but it does so "with the understanding that the mill is at Arkansas City." The plaintiffs at the time of the actual transaction apparently disregarded these positive and material statements of the defendant and considered themselves free to fill the order from any source that best suited their convenience. Up to early November they always referred to the product as coming from "our mill" or "our shipper." The only mill or shipper which they had brought to the attention of the defendant before November 10, 1920, was the Arko Mill at Arkansas City, Arkansas. The only mill by which the defendant, at the very time of the giving of this order, told them that they expected the order to be filled was the Arko Lumber Company band mill at Arkansas City. A buyer has the right to stipulate the specific mill which is to furnish him with the desired lumber if he reasonably brings it to the attention of the seller. Reliance upon the reputation of a known producer is a fundamental thought in the mind of a cautious buyer. In this case the defendant made it clearly known to the plaintiffs that he relied upon the reputation and was contracting for the product of the Arko Mill in Arkansas City. The plaintiffs saw fit to place the order with a firm which was undisclosed to the defendant until November 10, 1920, and which then turned out to be a firm with which the defendant had refused for some years to do business on account of the nature of the lumber which it used and its unsatisfactory way of doing business. The plaintiffs' claim that the defendant's real reason for

terminating the contract was the falling market is rather disproven by the defendant's conduct in accepting and paying for the heavily overladen car of lumber at a time when prices were falling rapidly. If any inference of insincerity is to be drawn against any one, it may with just as much reason be drawn against a seller who is explicitly told what the buyer expects, who indifferently passes by the purchaser's instructions, who keeps the name of the real manufacturer undisclosed under the assuring description of "the mill" or "our shipper" and only makes the real facts known to the buyer when the manufacturer in turn begins to push the seller for his money.

As honesty in business relations is to be assumed until the contrary is clearly proven, this court prefers to construe the conduct of the parties either on the ground that the plaintiffs' misconstrued their legal obligations from facts definitely brought to their attention and upon which they are to be held as having acted when they went ahead and began to fill the defendant's order, or else that the plaintiffs and defendant misunderstood each other and never agreed upon a common proposition. The defendant had the right to order what it wanted, to be manufactured where and by whom it wanted. This was brought distinctly to the plaintiffs' attention at the very time that the order was given. The real contract, if any, between the parties is to be found, therefore, not only within the four corners of the order itself, as the plaintiffs maintain, but from the order as accepted, modified or restricted by the statements and conduct of the parties at the time the agreement was entered into. The defendant had a right under the contract actually made between these parties to demand lumber furnished in accordance with its real order, namely, from the Arko Lumber Co. of Arkansas City, Arkansas. It had a right to refuse, and seasonably did refuse, lumber manufactured by any one else. If the facts admitted of any misunderstanding between the parties, then it is quite evident that no contract was ever entered into between these firms. Under this possible view the plaintiffs were willing to sell the lumber requested as manufactured by any concern that they might choose. Defendant was willing to buy the lumber they wanted as manufactured by a particular producer. The minds of the parties, therefore, never came to a common understanding. Defendant paid for whatever lumber it received at the price stipulated in the attempted contract, which was higher than the market price at the time of delivery. If we take the view that there was a contract limiting the plaintiffs as to the source of manufacture, then the plaintiffs, having disregarded this important point, can not complain that the defendant refused to complete the agreement which the plaintiffs have themselves violated. If we accept the theory that the minds of the parties never met upon a common ground, then the defendant, having paid for all the lumber which it actually had received from the plaintiffs, is under no further obligation.

Motion for new trial denied.

For Plaintiffs: Gardner, Moss & Haslam.

For Defendant: P. W. Gardner, A. L. Sawyer.